## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

---

WEATHER SHIELD MFG., INC.,

                             Plaintiff,

      v.

DANIEL DROST,

                           Defendant.

**OPINION & ORDER**

17-cv-294-jdp

---

After nearly 24 years of employment at plaintiff Weather Shield Mfg., defendant Daniel Drost accepted a position with Weather Shield's competitor, Kolbe & Kolbe Millwork Co. But before he resigned from Weather Shield, Drost copied thousands of documents from its computer network and transferred them to his personal devices. Drost also surreptitiously met with his new employer and transferred information from his Weather Shield iCloud account to a new, Kolbe-provided iPhone. Then, when Drost finally did resign from Weather Shield, he deleted the contents of his personal drive on the Weather Shield network, the majority of the files from his work laptop, and notes that he saved on company devices and company cloud storage.

Upset over the betrayal of a once-loyal employee, Weather Shield brought claims for misappropriation of trade secrets, computer fraud, breach of the duty of loyalty, and conversion of property. Dkt. 67. Weather Shield now moves for summary judgment on all claims. Dkt. 107. Because there are manifestly disputed facts for all claims, the court will deny Weather Shield's motion.

ANALYSIS

The broad outline of Drost's actions, recited above, is undisputed. But the facts material to each claim are sharply and genuinely disputed. In its analysis of each claim, the court will discuss any disputed facts that are relevant to its decision.

Summary judgment is appropriate only if there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment will not be granted unless "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 970 (7th Cir. 2004) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

## A. Misappropriation of trade secrets

Trade secret misappropriation is easy to plead but hard to prove. *Kuryakyn Holdings, LLC v. Ciro, LLC*, 242 F. Supp. 3d 789, 800 (W.D. Wis. 2017). To succeed on a trade secret claim, Weather Shield must first prove that the misappropriated information constitutes a trade secret. And because determining what constitutes a trade secret requires an evaluation of numerous factors, the existence of a trade secret is ordinarily a question of fact that is inappropriate for summary judgment. *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 723 (7th Cir. 2003); *see also N. Highland Inc. v. Jefferson Mach. & Tool Inc.*, 2017 WI 75, ¶ 67, 377 Wis. 2d 496, 898 N.W.2d 741. That's the case here.

Weather Shield claims Drost misappropriated its trade secrets in violation of Wisconsin's Uniform Trade Secrets Act (UTSA), Wis. Stat. § 134.90, and the federal Defend

Trade Secrets Act of 2016 (DTSA), 18 U.S.C. § 1836. The UTSA supplies the definition of a trade secret for both claims. *Kuryakyn Holdings*, 242 F. Supp. 3d at 797. A trade secret is:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique or process to which all of the following apply:
>
> 1. The information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> 2. The information is the subject of efforts to maintain its secrecy that are reasonable under the circumstances.

Wis. Stat. § 134.90(1)(c).

### 1. Identification of trade secrets

Weather Shield contends that all strategic plans, customer data, and pricing information constitute trade secrets as a matter of law. Dkt. 107, at 7; Dkt. 123, at 2. But such information is only *potentially* a trade secret. A strategic document may contain specific information that a plaintiff can identify as a trade secret, but the plan itself is not a trade secret. *Encap, LLC v. Scotts Co., LLC*, No. 11-C-685, 2014 WL 4273302, at *3 (E.D. Wis. Aug. 28, 2014) (collecting cases). Customer lists are trade secrets only if the market consists of identical or nearly identical products sold to a "small, fixed group of purchasers." *Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 434 N.W.2d 773, 779 (1989). And pricing lists are trade secrets only when prices are based on complicated or unique formulas that the customers do not know about, or when the customers sign a contract prohibiting them from disclosing the price. *Burbank Grease Servs., LLC v. Sokolowski*, 2005 WI App 28, ¶ 22, 278 Wis. 2d 698, 693 N.W.2d 89 (collecting cases), *aff'd in part, rev'd in part on other grounds*, 2006 WI 103.

Here, Weather Shield does not identify what specific information within its strategic planning documents contains trade secrets. Weather Shield does not explain exactly how large its target market of dealers is. And although Weather Shield mentions a "discount conversion formula" related to its prices, Weather Shield does not provide the formula nor does Weather Shield describe it in detail. The claim that dealers maintained the confidentiality of Weather Shield's pricing is disputed. Dkt. 124, ¶ 44.

Furthermore, it is not enough to claim that the documents fall into broad categories of confidential information. The party claiming trade secrets protection must identify the specific information that it alleges contains trade secrets, and then show that the identified information is valuable because it is not generally known and cannot be readily ascertained by proper means. *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002). Weather Shield has not met this burden. Several of its identified trade secrets—such as "internal meeting notes"—are too vague for the court to determine if they meet the statutory definition. Dkt. 107, at 5. Weather Shield elaborates upon this description in its proposed findings, but the longer description is no more specific: "meeting notes that highlight next steps and persons responsible for certain Weather Shield's strategic initiatives." Dkt. 108, ¶ 167(e). It is Weather Shield's responsibility, not the court's, to pin down the specific information that Weather Shield considers a trade secret. *IDX Sys*, 285 F.3d at 583.

## 2. Reasonable precautions to maintain secrecy

Weather Shield must show it took reasonable precautions to maintain the secrecy of its information. "[O]nly in an extreme case can what is a 'reasonable' precaution be determined on a motion for summary judgment." *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 925 F.2d 174, 179 (7th Cir. 1991). Although absolute secrecy is not required, the

precautions must go beyond "normal business practices." *Starsurgical Inc. v. Aperta, LLC*, 40 F. Supp. 3d 1069, 1082 (E.D. Wis. 2014). And though confidentiality agreements may be evidence of a trade secret, such agreements do not alone establish reasonable precautions. *Fail-Safe, LLC v. A.O. Smith Corp.*, 674 F.3d 889, 893 (7th Cir. 2012) (citing *ECT Int'l, Inc. v. Zwerlein*, 228 Wis. 2d 343, 597 N.W.2d 479, 484 (Ct. App. 1999)).

The reasonableness of Weather Shield's precautions is disputed. Dkt. 124, ¶¶ 61–86. Many of Weather Shield's precautions consist of nothing more than standard business practices, such as operating a password-protected computer system, requiring terminated employees to return documents, and requiring digital customers to agree to boilerplate terms and conditions. Weather Shield also had a confidentiality agreement, an employee handbook, and an electronic communications policy. But Drost did not sign the confidentiality agreement, Drost disputes whether the handbook was actually enforced, and Drost disputes receiving the communications policy. Viewing the facts in the light most favorable to Drost, a reasonable factfinder could find that Weather Shield did not make appropriate efforts to maintain secrecy.

Because Weather Shield has not identified with particularity the information that it alleges meets the statutory definition of a trade secret, and because the parties genuinely dispute whether reasonable precautions were taken to protect the secrecy of Weather Shield's information, summary judgment is denied on the trade secrets claims.

## B. Breach of duty of loyalty

When a claim for breach of a duty of loyalty is made against an employee, the first question is whether the employee has a fiduciary relationship with the employer. *Burbank Grease Servs., LLC v. Sokolowski*, 2006 WI 103, ¶ 42, 294 Wis. 2d 274, 717 N.W.2d 781. The

parties agree that Drost was not an officer of Weather Shield. Dkt. 125, ¶ 4. Therefore, Drost had a fiduciary relationship, and therefore owed a duty of loyalty, only if he was a "key employee" of Weather Shield. *Burbank Grease Servs.,* 2006 WI 103, ¶ 42. Under Wisconsin law, a key employee is one whose job responsibilities are of such a nature, in the context of the employer's business, that they may be used to harm the employer. *InfoCorp, LLC v. Hunt,* 2010 WI App 3, ¶ 31, 323 Wis. 2d 45, 780 N.W.2d 178. A key employee breaches his duty of loyalty if, during the course of employment, he uses his employer's confidential information to aid a competitor. *Modern Materials, Inc. v. Advanced Tooling Specialists, Inc.,* 206 Wis. 2d 435, 557 N.W.2d 835, 839 (Ct. App. 1996).

Here, the undisputed facts show that Drost was a key employee of Weather Shield because his job responsibilities gave him access to confidential information that, if shared with a competitor, could harm Weather Shield. *E.g.* Dkt. 124, ¶¶ 23–25, 100. And while employed with Weather Shield, Drost met with Robert Kasten, a Kolbe officer. Dkt. 124, ¶¶ 102, 104–107; Dkt. 116 (Drost Dep. 102:3–103:24, 124:3–129:20). At that meeting, Drost and Kasten discussed Firerock, a potential Weather Shield customer that Drost met with the day before. Drost also received a new phone from Kolbe, and the Kolbe IT staff connected it to Drost's Weather Shield iCloud account.

But that is where the undisputed facts end. Weather Shield has not explained what information was stored in the iCloud account, nor shown that it contained confidential material. Weather Shield alleges that Drost used the meeting to share the details of his negotiations with Firerock, but it cannot point to specific confidential information that Drost shared. A reasonable factfinder could determine that, despite the appearance of impropriety, Drost's meeting with Kasten was limited to benign new-employee matters.

## C. Computer Fraud and Abuse Act

To have a right of action under the Computer Fraud and Abuse Act (CFAA), Weather Shield must establish that it suffered at least $5,000 in losses during a one-year period as a result of Drost's actions. 18 U.S.C. §§ 1030(g), 1030(c)(4)(A)(i)(I). "Loss" is defined by the CFAA as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense." *Id.* § 1030(e)(11). Loss includes the reasonable costs of investigating the offense, irrespective of whether there was an interruption of service. *Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1173–74 (11th Cir. 2017). But loss does not include the costs of litigating a CFAA claim against the alleged offender. *NCMIC Fin. Corp. v. Artino*, 638 F. Supp. 2d 1042, 1065 (S.D. Iowa 2009) (citing *Wilson v. Moreau*, 440 F. Supp. 2d 81, 110 (D.R.I. 2006), *aff'd*, 492 F.3d 50 (1st Cir. 2007)).

Drost asks the court to adopt the rule espoused in *Jarosch v. Am. Family Mut. Ins. Co.*, 837 F. Supp. 2d 980 (E.D. Wis. 2011), which states that loss must relate to the impairment or unavailability of data. *Id.* at 1022–23. But the restrictive definition in *Jarosch* doesn't adequately reflect the broad statutory language which defines loss to include "any reasonable cost to any victim, including the cost of responding to an offense." 18 U.S.C. § 1030(e)(11). And although the Seventh Circuit has not ruled on this issue, other appellate courts have held that an interruption of service is unnecessary. *Brown Jordan*, 846 F.3d at 1173 (citing cases); *see also Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1066 (9th Cir. 2016) (lack of damage to computer system was not a bar to claiming internal investigation costs as loss).

So to meet the $5,000 threshold, Weather Shield must identify the costs—apart from this lawsuit—that it spent to investigate Drost's actions, and then it must prove that those

costs were reasonable. Weather Shield's only evidence of loss is an invoice from Digital Intelligence, Inc. Dkt. 112-1. Many, if not most, of the items on the invoice are expenses that Weather Shield incurred as a result of this litigation. For example, the invoice includes billings for communicating with Weather Shield's counsel, drafting expert reports, and reviewing items received in discovery. At this point, the court cannot tell whether at least $5,000 from this invoice falls under the CFAA's definition of loss, so the court cannot grant summary judgment in Weather Shield's favor.

## D. Wisconsin Computer Crimes Act

Weather Shield contends that Drost violated the Wisconsin Computer Crimes Act (WCCA) when (1) he downloaded confidential files before his resignation and took the files to Kolbe; and (2) he deleted his personal drive from the Weather Shield laptop without authorization. The WCCA makes it illegal to "willfully, knowingly and without authorization" modify, destroy, take possession of, or copy data. Wis. Stat. § 943.70(2)(a). To violate the WCCA, an offender must know that his actions are unauthorized. Wis. Criminal Jury Instructions § 1504.

The Wisconsin Supreme Court has limited the WCCA's applicability in cases against former employees. *Burbank Grease Servs.*, 2006 WI 103. In *Burbank Grease*, an employee accepted a new job, obtained confidential information from his employer's computer system before resigning, and then disclosed the information to his new employer. *Id.*, ¶ 6. The court held that the WCCA did not apply because although the employee was not authorized to disclose the information, he had been authorized to obtain the information in the first instance. *Id.*, ¶ 39.

Weather Shield's first claim, that Drost downloaded files before resigning, fails under *Burbank Grease*. For Weather Shield's second claim, that Drost deleted work files, the parties dispute whether Drost had permission to delete the files. Dkt 124, ¶¶ 152–153. Because Drost's authorization is disputed, and because Weather Shield has not shown that Drost knew that his actions were unauthorized, the court denies summary judgment on the WCCA claim.

## E. Conversion

Weather Shield's final claim is for common law conversion. Conversion in Wisconsin is limited to tangible property, *Maryland Staffing Servs., Inc. v. Manpower, Inc.*, 936 F. Supp. 1494, 1507 (E.D. Wis. 1996), and the diversion of money. *Methodist Manor of Waukesha, Inc. v. Martin*, 2002 WI App 130, ¶ 7, 255 Wis. 2d 707, 647 N.W.2d 409.

Weather Shield's primary claim is that Drost misappropriated its intellectual property. That action fails to state a claim for conversion under Wisconsin law. Weather Shield argues that Drost also took hard copies of documents, but that would not entitle Weather Shield to claim the intangible information printed on the documents. If Weather Shield intends to claim damages for the paper and toner used to print these documents, Weather Shield has not developed that claim. Weather Shield also argues that Drost took USB drives belonging to Weather Shield. Again, this would not entitle Weather Shield to claim any intangible information stored on the USB drives. As to Weather Shield's claim to the USB drives themselves, Drost disputes that he was required to return them. Dkt. 124, ¶ 71.

Weather Shield also claims that Drost misused company funds on two occasions. *Id.*, ¶¶ 131–132. First, Weather Shield alleges that Drost took his family with him on a business trip to San Diego, then claimed company reimbursement for his family's vacation

costs. Second, Weather Shield alleges that Drost used company funds to purchase tickets to events at local sporting clubs. Because the details of both events are disputed, the court will deny summary judgment on these claims.

ORDER

IT IS ORDERED that plaintiff Weather Shield Mfg, Inc.'s motion for summary judgment, Dkt. 106, is DENIED.

Entered August 10, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge